Marguerite M. Schaffer, Esq. (MS6527)
SHAIN SCHAFFER PC
150 Morristown Road, Suite 105
Bernardsville, New Jersey 07924
Telephone: (908) 953-9300
Facsimile: (908) 953-2969
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAURA J. LANNIN, individually and on behalf of all others similarly situated, | : | Civil Action No.: 3:18-cv-15146 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| NRT TITLE AGENCY, LLC; | : | |
| ACRES LAND TITLE AGENCY, INC.; | : | |
| BROAD STREET TITLE AGENCY, LLC; | : | |
| CHP TITLE AGENCY, LLC; | : | **CLASS ACTION COMPLAINT** |
| HLT TITLE AGENCY, LLC; | : | |
| JGH TITLE AGENCY, LLC; | : | |
| KL TITLE AGENCY, LLC; | : | |
| MID-TOWN DIRECT TITLE AGENCY; | : | |
| TOWNE SQUARE TITLE AGENCY, LLC; | : | |
| TRADITIONS TITLE AGENCY, LLC; | : | |
| WATERFRONT TITLE AGENCY, LLC; | : | |
| PONY MESSENGER SERVICE, LLC; | : | |
| A-ABSOLUTE ESCROW SETTLEMENT INC.; | : | |
| TITLE RESOURCES GUARANTY COMPANY; | : | |
| NRT, LLC; | : | |
| REALOGY CORPORATION; AND | : | |
| PETER A. UZZOLINO, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, Laura J. Lannin ("Plaintiff"), by her attorneys, brings this action on behalf of

herself and all others similarly situated against Defendants NRT Title Agency, LLC ("NRT Title")

Acres Land Title Agency, Inc., Broad Street Title Agency, LLC, CHP Title Agency, LLC, HLT Title Agency, LLC, JGH Title Agency, LLC, KL Title Agency, LLC, Mid-Town Direct Title Agency, Towne Square Title Agency, LLC, Traditions Title Agency, LLC, Waterfront Title Agency, LLC, Pony Messenger Service, LLC, A-Absolute Escrow Settlement Inc., Title Resources Guaranty Company, NRT LLC, Realogy Corporation, and Peter A. Uzzolino (collectively, "Defendants").

## I.     BACKGROUND

1.      Title insurance is often one of the most costly items associated with the closing of any real estate purchase.  It protects the purchaser of a property from defects or encumbrances affecting title.  Lenders generally require borrowers to purchase title insurance to protect their collateral should a title challenge arise.

2.      Despite the importance and high cost of title insurance, consumers generally have little understanding of the product, the purpose it serves, and the reasonableness of the price they pay for it.  They also exercise little discretion in choosing the title insurers.  That decision is typically made for them by their lawyers, mortgage brokers, lenders, or realtors.

3.      The most effective way for a particular title insurance agency to get business is to encourage those making the purchasing decisions to steer business to that agency.  An unscrupulous way to motivate these decision-makers is through kickbacks in the form of finder's fees, gifts, disguised profits, and other financial enticements, promise of future referrals, or threats to withhold same.

4.      Because title insurance premiums are statutorily set and uniform among the insurers, an unprincipled title agency often finances its kickbacks through excessive non-premium fees and charges.  Such fees and charges also produce substantial additional profits for the agency.

5.      The Title Insurance Act of 1974, <u>N.J.S.A</u>. 17:46B-1 to -62 (the "Act"), comprehensively regulates title insurance companies doing business in New Jersey. The Act prohibits, among other things, a title insurance agency from charging any fee for any policy or contract for title insurance except in accordance with the rates, fees and charges approved by the Commissioner of the Department of Banking and Insurance (the "Commissioner").

6.      For years, NRT Title, reputedly the largest title agency in New Jersey by business volume, and its affiliates have been illegally marking up pass-through costs, charging fees for services not performed and giving improper kick-backs and referrals to each other, causing substantial harm to their unwitting customers. Their illicit practices have been uniform and consistent, thus victimizing almost each and every one of their customers.  These practices violate, *inter alia*, the New Jersey Title Insurance Act and its implementing regulations, the New Jersey Consumer Fraud Act, and the federal Real Estate Settlement Procedures Act's ("RESPA") prohibitions against illegal mark-ups, referrals and kick-backs.

7.      NRT Title and its affiliated title agencies are sham ventures carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks and things of value in exchange for referrals of settlement services including title insurance to and among them.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this is a  civil action arising, *inter alia*,  under the laws of the United States, i.e., Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq*.

9.      This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2), in that this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any

member of a class of plaintiffs is a citizen of a State different from any defendant." *Id*. The named

Plaintiff is a citizen of the State of New Jersey.

10.    Venue is appropriate inasmuch as the named Plaintiff is a resident of the State of

New Jersey. The transactions at issue took place in New Jersey, and the properties for which title

insurance were purchased are located in New Jersey.

### III.    THE PARTIES

11.    Plaintiff Laura J. Lannin is an individual currently residing at 9 Wildflower Lane,

Morristown.

12.    Defendant NRT Title is a limited liability company doing business in New Jersey

with its principal place of business at 55 Essex Street, Millburn, NJ, 07041. NRT Title first

registered in New Jersey on October 2, 2000.

13.    Defendant Peter A. Uzzolino, a member of NRT, is an individual currently residing

at 216 Golf Edge Drive, Westfield, New Jersey 07090.

14.    Defendant Peter A. Uzzolino also partially owns the following joint venture title

insurance agency defendants: NRT Title, Acres Land Title Agency, LLC, Broad Street Title

Agency, LLC, CHP Title Agency, LLC, HLT Title Agency, LLC, JGH Title Agency, LLC, KL

Title Agency, LLC, Mid-Town Direct Title Agency, Towne Square Title Agency, LLC, Traditions

Title Agency, LLC, and Waterfront Title Agency, LLC (collectively "Affiliated Title Insurance

Agency Defendants"). All Affiliated Title Insurance Agency Defendants have the same registered

main business address: "55 Essex Street, Millburn, NJ 07041."

15.    Defendant Pony Messenger Service, LLC, owned by Defendant Uzzolino, is a

messenger delivering title binders exclusively for the Affiliated Title Insurance Agency

Defendants.  It has the same main business address, 55 Essex Street, Millburn, NJ, 07041.

16.    Defendant A-Absolute Escrow Settlement Inc., also owned by Defendant Uzzolino, provides real estate closing services to the Affiliated Title Insurance Agency Defendants.  It also shares the same main business address: "55 Essex Street, Millburn, NJ 07041."

17.    NRT Title is a joint venture between Defendant NRT LLC and Defendant Uzzolino.

18.    Defendant NRT LLC is a Delaware limited liability company founded in 2007, with its headquarters in 175 Park Avenue, Madison, New Jersey.  It is the nation's largest residential brokerage company, which owns and operates residential real estate brokerage businesses in the United States under the Coldwell Banker, Corcoran, Sotheby's International Realty, ZipRealty and Citi Habitats brand names.

19.    Defendant Realogy Corporation ("Realogy"), the parent company of NRT LLC, is incorporated in Delaware and headquartered at 175 Park Avenue, Madison, New Jersey.  Realogy also operates title and settlement services nationally through a subsidiary called Title Resource Group ("TRG")[1].

20.    Defendant Title Resources Guaranty Company, a title insurance underwriter, is an affiliate of NRT Title and a subsidiary of Realogy. Its registered main business address is 811 Church Road #105, Cherry Hill, NJ 08002.

## V.    FACTUAL ALLEGATIONS

### Markups of Pass-through Costs and Impermissible Charges

---

[1] According to TRG's own website, "TRG's Family of Companies operate over 40 distinct company and brand names throughout the United States such as Title One (ID), Sunbelt Title (FL), Equity Title (CA), Texas American Title Company (TX), Market Street Settlement Group (NH/ME), Mid-Atlantic Settlement (MD) and Burnet Title (MN / IL / WI)."

21.     Pursuant to the Title Insurance Act of 1974 (the "Act"), N.J.S.A. 17:46B-1 to -62, a title insurance agency cannot charge any fee for any policy or contract for title insurance "except in accordance with filings or rates" approved by the Commissioner.

22.     The rates, fees and charges approved by the Commissioner are contained in the Manual of Rates and Charges (the "Rate Manual") published by the New Jersey Land Title Insurance Rating Bureau.

23.     In addition, a regulation implementing the Act, N.J.A.C. 11:17B-3.1, provides that "[i]nsurance producers acting as agents for an insurance company for personal lines insurance shall not charge or receive any fee on a policy to or from a policyholder or insured for services rendered as an insurance producer. . . ."

24.     Further, N.J.A.C. 11:17B-3.2 provides that "[n]o charge may be made for services not actually performed."

25.     Section 5.3 of the Rate Manual, entitled "PASS THROUGH CHARGES FOR SEARCHES," provides that "*[c]osts* for requested or required searches will be separately charged to the Applicant…." (emphasis added).  The Rate Manual, read together with applicable statutes and regulations, only authorizes actual costs of searches, not markups. N.J.S.A. 17:46B-42d; N.J.A.C. 11:17B-3.2.

26.     NRT Title thus cannot mark up the pass-through costs without approval by the Commissioner.

27.     However, for years, NRT Title has been substantially marking up the pass-through costs for almost all of its customers.

28.     In addition, NRT Title has been charging its customers fees for services not actually performed or other fees impermissible under New Jersey and federal law.

29.    NRT Title's customers are almost invariably unaware of the inherently deceptive markups and fees.

30.    Plaintiff closed on her home located in 9 Wildflower Lane, Morristown on January 18, 2018 and utilized NRT Title as her title insurance agency.

31.    Plaintiff's mortgage lender, Guaranteed Rate Affinity LLC, an affiliate of Defendant Realogy, chose NRT Title to perform title searches.

32.    The invoice from NRT Title to Plaintiff dated December 17, 2017 (the "Invoice") reveals that apparent markups were made to various pass-through costs including, *inter alia*, Tax and Assessment Searches (total charge $50, actual cost charged to NRT Title was around $35, a $15 markup), Flood Hazard Certificate (total charge $25, , approximately a $10-15 markup);

33.    In addition, NRT Title charged Plaintiff fees for services not actually performed or impermissible under New Jersey law, including, but not limited to, $75 for "Document Review" (not permitted by the Rate Manual); $50 for "Preparation of Description"; $25 for "Transaction Management Fee"; $50 for the "Messenger," $300 for "Closing Prep" and $25 for "Secondary Mortgage Market Endorsement."

34.    A charge for "Preparation of Description" is permitted by the Rate Manual in limited circumstances, but NRT did not actually perform the service for Plaintiff.

35.    Although NRT consistently bills its customers for "Preparation of Description," it almost never performs the actual service.

36.    The Rate Manual only allows a title insurance agent to charge a fee for preparation of property description when the "agent is asked to prepare a legal description of real estate from a survey."  Merely copying or changing an existing description that may be contained in a prior

deed or title policy does not constitute the "preparation of description." Normally, survey companies prepare them using specialized software and charge for the preparation.

37.    Because the property purchased by Plaintiff is a condominium unit described by unit number and reference to the Master Deed, no preparation of property description was required.

38.    NRT Title also consistently and wrongfully bills its customers "Transaction Management Fees," although it does not actually incur the "per file/transaction" fee charged by a software vendor.

39.    According to the Rate Manual, "Transaction Management Platform Fees" are those fees charged on a "per file/transaction basis" to the Insurer or Title Insurance Agent by software vendors to process and post title, settlement and related documents on the internet to enable customers, lenders and their representatives to access and obtain delivery. Title agents in New Jersey usually do not charge such fees.

40.    NRT Title not only charges its customers Transaction Management Platform Fees, but also delivers hard copies of title searches through its affiliated messenger service and charges its customers expensive and unnecessary delivery fees.

41.    NRT Title charged Plaintiff $50 for "Messenger," which was paid to Defendant Pony Messenger Service, LLC, which delivers title binders exclusively for NRT Title and other Affiliated Title Insurance Agency Defendants.

42.    The same day hand delivery of a title commitment to an attorney's office is totally unnecessary in today's era of emails and cheaper commercial overnight delivery services. This is an unnecessary sham cost which NRT Title imposed upon its captive customers including Plaintiff.

43.    NRT Title also charged Plaintiff $300 for "Closing Prep."  This is a duplicate and impermissible fee.

44.     Any "prep" of the closing documents should be part of the closing or settlement charge according to the Rate Manual.

45.     Defendant A-Absolute Escrow Settlement conducts closings for NRT Title and other Affiliated Title Insurance Agency Defendants.

46.     Absolute Escrow Settlement separately charged Plaintiff for its closing service for a "settlement fee" of $525 in addition to various other fees.

47.     NRT Title also wrongfully charged Plaintiff $25 for "Secondary Mortgage Market Endorsement."

48.     Although NRT Title consistently charges its customers for Secondary Mortgage Market Endorsements, such endorsements are rarely required by mortgage lenders/investors.

49.     The total charge to Plaintiff for title insurance by NRT Title was $3,091.00 but the premium portion of the charge was only $1,796.00.

50.     Overall, NRT Title wrongfully charged Plaintiff at least $545 for title insurance, representing the total amount of illegal markups, the fees for services not actually performed or other legally impermissible fees.

51.     Upon information and belief, NRT Title has been hiding the true pass-through costs via various means, including, among others, obtaining blank invoices or inflated/fabricated invoices from its third party vendors.

52.     Upon information and belief, Defendants NRT LLC, and Realogy Corporation knew or should have known about the foregoing illicit practices and approved same.

53.     Besides NRT Title, all Affiliated Title Insurance Agency Defendants have engaged in the same practices described above.

54.     Defendant Uzzolino was the mastermind behind the illicit billing practices for all Affiliated Title Insurance Agency Defendants. He, together with the other Defendants, plotted and carried out the over-charge scheme.

**Illegal Referrals and Kick-Backs**

55.     Affiliated Title Insurance Agency Defendants and their affiliates in real estate brokerage, insurance underwriting and legal industries, including, among others, Defendants Pony Messenger Service, LLC, A-Absolute Escrow Settlement Company, Title Resources Guaranty Company, NRT LLC, Realogy Corporation, and various non-defendant co-conspirators (collectively "NRT Affiliates") , exclusively refer customers to each other and utilize each other's services without adequate disclosures to consumers.

56.     Some of NRT Affiliates do not have sufficient initial capital and net worth; have no employees of their own; have no separate offices; provide no substantial or valuable services; do not actively compete in the marketplace for business and send business exclusively to each other.

57.     There is no adequate separation of staff, accounting, infrastructure and offices among the NRT Affiliates.

58.     All Affiliated Title Insurance Agency Defendants share the same main business address at 55 Essex Street, Millburn, NJ, 07041.

59.     Many NRT Affiliates share the same phone numbers, email addresses, and letterhead.

60.     The NRT Affiliates' business arrangements are not adequately disclosed to customers; captive customers are in effect required to exclusively use services of the affiliates.

61.    Defendants NRT LLC, Realogy Corporation and their affiliates have written or unwritten policies and practices to effectively direct its brokers, agents and employees to refer title insurance businesses almost exclusively to NRT Title.

62.    The co-owners of the Affiliated Title Insurance Agency Defendants have written or unwritten policies and practices to effectively direct its brokers, agents and employees to refer title insurance businesses almost exclusively to Affiliated Title Insurance Agency Defendants.

63.    Certain attorneys have been advised by such brokers, agents and employees to use the Affiliated Title Insurance Agency Defendants or lose referrals.

64.    These attorneys may or may not know about the markups and impermissible charges, but they are financially incentivized to turn a blind eye.

65.    The Affiliated Title Insurance Agency Defendants and their affiliates were and are sham ventures carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks and things of value in exchange for referrals of settlement services to and among the Defendants, including referrals of title insurance and other settlement services.

66.    NRT Affiliates' referral practices violated the respective anti-kickback provisions of both RESPA, 12 U.S.C. § 2607, and the Title Insurance Act of 1974, N.J.S.A. 17:46B-37.

67.    As a result of the referrals described above, which were made in conformity with the illegal scheme described herein between and among the NRT Affiliates, Plaintiff paid more for settlement services including title insurance than she would have paid in the absence of the referrals and kickbacks.

68.    Plaintiff did not receive adequate disclosure of the affiliated business arrangement of NRT Title and its affiliates and was not aware of the true nature of the arrangement among them.

## IV.    CLASS ALLEGATIONS

69.    This class action is brought on behalf of Plaintiff and members of the Class (defined below) to recover for the harm caused by Defendants' pattern of unlawful and deceptive acts and practices as alleged herein.

70.    Throughout the Class Period (defined below), the Affiliated Title Insurance Agency Defendants engaged in deceptive acts and practices and defrauded members of the Class by charging fees and charges in excess of the statutorily-mandated rates without disclosing their impermissible charges to consumers. Defendants affirmatively and deliberately overcharged these consumers to the detriment of Plaintiff and the other members of the Class.

71.    The acts, practices and conduct of which Plaintiff complains commonly affect a class consisting of:

All persons who (i) paid for a policy of title insurance issued by Affiliated Title Insurance Agency Defendants in connection with the purchase of any real property located in New Jersey that was completed at any time from October 2, 2000 to the present (the "Class Period"); and (ii) paid more than the statutorily permitted fees and charges for such title insurance (the "Class"). Based upon information and belief, the Affiliated Title Insurance Agency Defendants overcharged each and every one of their customers during the Class Period.

72.    The Class, as defined above, is identifiable and unambiguous based on objective information and criteria.

73.    Plaintiff is a member of the Class.

74.    The members of the Class are so numerous that joinder is impractical. Upon information and belief, the Class is comprised of tens of thousands of individuals and entities. Plaintiff does not know the exact number of class members because such information is in the

exclusive control of Defendants.   The precise number and identity of Class members is ascertainable from Defendants' books and records.   Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notices.

75.    There are questions of law and fact common to the members of the Class, which questions predominate over any individual issues, including, but not limited to

a.    Whether Defendants engaged in the systematic overbilling as alleged in this Complaint;

b.    The nature of the relationships of Defendants to one another;

c.    Whether Defendants gave and accepted benefits in exchange for the referral of title insurance and settlement services, and if so, the nature and extent of such benefits;

d.    Whether Defendants' billing practices violated Section 8 of RESPA, the New Jersey Title Insurance Act and Consumer Fraud Act ; and

e.    Whether Defendants' relationships with each other and exchange of benefits violated Section 8 of RESPA.

76.    The claims and defenses of Plaintiff are typical of the claims of all members of the Class.  Defendants have consistently and systematically engaged in the above-alleged billing and referral practices.  By proving her case, Plaintiff will simultaneously prove the case of the members of the Class.

77.    Plaintiff will fairly and adequately represent the Class. Plaintiff is willing and able to serve as a representative of the Class, and has no knowledge of any possible divergent interest between herself and any member of the Class. Plaintiff has retained highly competent counsel experienced in complex litigation to provide representation on behalf of Plaintiff and the Class.

78.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

79.    The prosecution of separate actions would also create a substantial risk of adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

80.    Questions of law and fact common to members of the Class predominate over any questions affecting individual members. The determinative facts and legal principles apply universally to Plaintiff and the members of the Class. Indeed, the predominant legal issue in this case, which cuts across the entire Class, is whether Defendant breached a legal duty universally owed to Plaintiff and the members of the Class in by overcharging legally permissible fees and charges, charging legally impermissible fees and/or failing to disclose its overcharges and improper referrals. If liability against Defendants are established on the basis of the common facts applied to universally applicable principles of law, then damages can be precisely calculated based on objective data.

81.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy for reasons including that, due to the expense of pursuing individual litigation regarding Defendants' common course of conduct alleged herein, members of the Class would, as a practical matter, be effectively precluded from protecting and enforcing their legal rights.  Prosecution of the action will require targeted discovery on complex issues and could not practically be pursued by individual litigants.  Plaintiffs and the other Class members' damages are relatively small compared to the burden and expense that would be required to individually

14

litigate the claims. In addition, individual litigation of Class members' claims would be impractical and unduly burdensome to the court system, and has the potential to lead to inconsistent results based on identical conduct. A class action provides the benefits of a single adjudication, economy of scale, and comprehensive supervision of a single court.

## V.    EQUITABLE TOLLING FOR CERTAIN CLASS MEMBERS

82.    During the relevant period, certain Class members did not discover and could not have discovered, through the exercise of due diligence, Defendants' violations of RESPA and New Jersey law because Defendants did not disclose, and actively concealed, their unlawful billing and referral practices. Such Class members were unaware of and had no knowledge of Defendants' billing and business affiliate arrangements.

83.    Such Class members could not have discovered Defendants' violations of law prior to filing suit because Defendants' illegal billing practices are inherently deceptive.

84.    Defendants' conduct constitutes a continuing violation of the law, and thus, such Class members' claims did not accrue until exposure of the Defendants' illegal conduct via this lawsuit.

85.    Plaintiff and the members of the Class will continue to be harmed by Defendants' deceptive and illegal practices.

## VI.    CAUSES OF ACTION

**COUNT I    VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**("CFA")**
**(Unconscionable Commercial Practices)**

86.    Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 86 of this Complaint as if fully alleged herein.

87.    The CFA, <u>N.J.S.A.</u> 56:8-2, prohibits:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing [ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise....

88.    Defendants are "persons" as defined by the CFA, <u>N.J.S.A.</u> 56:8-l (d) and have sold "merchandise" as defined by the CFA, <u>N.J.S.A.</u> 56:8- l (c).

89.    In the operation of its business, Defendants have engaged in the use of unconscionable commercial practices in connection with the sale of merchandise, including, but not limited to, title insurance and real estate settlement services.

90.    Defendant's conduct constitutes an unconscionable commercial practice in violation of the CFA, <u>N.J.S.A.</u> 56:8-2.

91.    Plaintiff and Class members suffered an ascertainable loss as a result of Defendants' false, misleading, or deceptive acts or promises as prohibited by <u>N.J.S.A.</u> 56:8-2.

92.    Pursuant to N.J.S.A. 56:8-146(a) and 56:8-19, Plaintiff and Class members are entitled to recover three times the actual amount of damages, together with court costs and reasonable attorneys' fees as a result of Defendants' violations of the CFA.

**COUNT II**
**(Unjust Enrichment)**

93.     Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 93 of this Complaint as if fully alleged herein.

94.     Defendants have benefited by charging, collecting and retaining title insurance related fees and charges in excess of what is legally permitted.

95.     Defendants unjustly charged Plaintiff and Class members for fees and charges.

96.     Through the wrongful, fraudulent, unlawful, and illegal activities alleged above, Defendants used the illicit proceeds to benefit themselves.

97.     As a result, Defendants have been unjustly enriched at Plaintiff's and Class Members' expense.

98.     As a direct and proximate result of Defendants' charging, collection, and retention of the fees and charges, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

**COUNT III**
**(Breach of Contract)**

99.     Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 99 of this Complaint as if fully alleged herein.

100.     Defendant formed an agreement and entered into a contract with Plaintiff and the Class members including offer, acceptance, and consideration (hereinafter called the "Contract").

101.     Pursuant to that Contract, Plaintiff and the Class members paid money to Defendant in exchange for Defendants' providing a policy of title insurance and other settlement services to Plaintiff and the Class members.

102.    The Contract included, without limitation, Defendants' obligation to charge a premium, and fees and charges in accordance with the Rate Manual and applicable law.

103.    Plaintiff and the Class members performed their obligations under the Contract by paying the premiums and fees charged by Defendants.

104.    Defendant breached the Contract by, without limitation, (a) overcharging Plaintiff and the Class members for title insurance and other settlement services; and (b) failing to inform Plaintiff and the Class members of such overcharges.

105.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

### COUNT IV
### VIOLATION OF SECTION (8)B OF RESPA
### (Markup and Unearned Fees)

106.    Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 106 of this Complaint as if fully alleged herein.

107.    Throughout the Class Period, Defendants provided "settlement services" involving "federally related mortgage loans," as such terms are defined by RESPA §§ 2602(1) and (3).  Such settlement services included, but were not limited to, title searches and  insurance.

108.    Section (8)b of RESPA ("Section (8)b)"), 12 USCS § 2607(b), provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

109.    Defendants' practice of charging Plaintiff and other Class members for markups, services not performed and other impermissible fees has violated Section (8)b's  prohibition

against for mark-ups and unearned fees.  Santiago v. GMAC Mortg. Group, Inc., 417 F.3d 384, 389-12 (3d Cir. 2005).

110.    12 U.S.C. § 2607(d) provides that "[a]ny person or persons who violate the prohibitions or limitations of this section [Section 8 of RESPA] shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."

111.    Pursuant to RESPA, 12 U.S.C. § 2607(d), Defendants are jointly and severally liable to Plaintiffs and the Class in an amount equal to three times the amount they have paid for Defendants' settlement services as of the date of judgment.

## COUNT V
## VIOLATION OF § 8(A) OF RESPA
### (Unlawful Referrals and Kickbacks)

112.    Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 112 of this Complaint as if fully alleged herein.

113.    12 U.S.C. § 2607(a) provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

114.    Throughout the Class Period, Defendants unlawfully paid "things of value," within the meaning of RESPA § 2607(a), to real estate brokers, agents and attorneys affiliated with Defendants in connection with the referral of real estate settlement services including, but not limited to, title insurance.

115.    Defendants paid their affiliates and real estate agents and brokers, millions of dollars that constituted fees, kickbacks or things of value incident to real estate settlement services

involving federally related mortgage loans.  The affiliates, and real estate agents and brokerages performed no services for such payments.  This practice violated RESPA, 12 U.S.C. § 2607(a) and 24 C.P.R.§§ 3500.14(b) and (c).

116.    Furthermore, throughout the Class Period, in connection with transactions involving federally related mortgage loans, Defendants paid, and real estate agents and brokers received, a portion, split, or percentage of charges received by Defendants for the rendering of real estate settlement services and/or business incident to real estate settlement services other than for services actually performed.

117.    Defendants referred title insurance and other settlement services to each other without fully disclosing to the consumers the true nature of the referral relationship, nor the fact that Defendants were required to cause affiliated brokers, agents, and attorneys to refer title insurance and other settlement services to each other.

118.    Defendants participated in the scheme in which the portion, split, or percentage of Defendants' settlement service charges were improperly shared. Plaintiffs and the Class Members were, in fact, harmed by Defendants' unlawful scheme.

119.    The Affiliated Title Insurance Agency Defendants were and are sham ventures engineered by the affiliates to facilitate and disguise the payment of unlawful referral fees and kickbacks in exchange for the referral of title insurance and other settlement services to each other and other Defendants.

120.    As a result of the unlawful referrals and kickbacks, Plaintiff and each member of the Class paid fees and other charges for title insurance and other settlement services to the Affiliated Title Agency Defendants.

121.    Defendants' scheme resulted in a limitation on both settlement service choice and competition. Plaintiffs and the Class were subjected to settlement services tainted by kickbacks or referrals of business inherently biased by Defendants' unlawful kickback scheme.  Defendants' agreements with real estate agents and brokers over time affected the price, quality, or other characteristics of the "referred" settlement services through, among other things, inherent limits on settlement service choice and competition.

122.    Plaintiffs and the Class were also harmed in that, their settlement service fees were artificially inflated as a result of Defendants' conduct.  The kickbacks and unearned fees alleged herein unnecessarily and artificially inflated the price of settlement service charges paid by Plaintiff and Class members.

123.    According to Section 8(d)(2) of RESPA, the resultant damages to Plaintiff and Class members are based on  the full amounts charged for the transactions tainted by illegal referrals and kickbacks.

124.    Pursuant to Section 8(d)(2) of RESPA, Defendants are jointly and severally liable to Plaintiff and the Class members for three times the amount of all fees and other charges paid to the Affiliated Title Insurance Agency Defendants for title insurance and other settlement services, for each federally related mortgage loan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the proposed Class, respectfully requests that the Court enter an order and judgment against Defendants as follows:

a)    Declaring that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for an order certifying this case as a class action;

b)    An order appointing Plaintiff's counsel as Class Counsel for the proposed Class;

c)      Issuing a permanent injunction requiring Defendants to cease and desist from its illegal billing practices;

d)      Ordering Defendant to refund the illegal amounts charged to Plaintiff and the Class members;

e)      Awarding treble damages to Plaintiffs and all Class members pursuant to 12 U.S.C. § 2607(d)(2) and New Jersey Consumer Fraud Act;

f)      Awarding costs and attorneys' fees to Plaintiffs' Class Counsel pursuant to 12 U.S.C. § 2607(d)(5);

g)      Awarding pre-judgment and post-judgment interest on any amount awarded; and

h)      Such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

SHAIN SCHAFFER PC
Attorneys for Plaintiff
Laura J. Lannin, et al.


By: _s/_ Marguerite M. Schaffer

Dated:  October 19, 2018