# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CHAMBERS OF
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 4066
NEWARK, NJ 07101
973-297-4903

August 27, 2019

<u>VIA ECF</u>

## LETTER ORDER

Re:     Lannin v. NRT Title Agency, LLC, et al.
        <u>Civil Action No. 18-15146</u>

Dear Litigants:

Before the Court are Defendants' Motions to Dismiss, ECF Nos. 20, 21, 22, Plaintiff Laura J. Lannin's ("Plaintiff") Complaint, ECF No. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motions filed by the Realogy Defendants' and the Uzzolino Group Defendants, ECF Nos. 20, 21, are granted. Defendant NRT Title's motion, ECF No. 22, is granted in part and denied in part.

## I.     Background

This matter arises out of Defendants' allegedly fraudulent scheme to overcharge customers and give improper kickbacks to each other while providing real estate closing services. See Compl. ¶¶ 6–7. Plaintiff brings claims against one individual and sixteen entities. The Defendants can be grouped into three categories: (1) NRT Title; (2) the Uzzolino Group Defendants; and (3) the Realogy Defendants.[1]

Plaintiff closed on her home in Morristown, New Jersey on January 18, 2018. Id. ¶ 30. Her mortgage lender, an affiliate of Realogy, chose NRT Title to perform her title searches. See id. ¶ 31. Plaintiff received an invoice from NRT Title dated December 17, 2017, which revealed

---

[1] NRT Title Agency, LLC ("NRT Title") is an entity that provided Plaintiff with services in connection with her real estate closing. Compl. ¶ 30. The "Uzzolino Group Defendants" consists of: Peter A. Uzzolino ("Uzzolino"), a member of NRT Title; ten title insurance agencies owned partially by Uzzolino (collectively, the "Affiliated Title Insurance Agency Defendants"); and two companies, Pony Messenger Service, LLC and A-Absolute Escrow Settlement, which are owned by Uzzolino and provide services to the Affiliated Title Insurance Agency Defendants. See id. ¶¶ 14–16. NRT Title and each of the Uzzolino Group Defendants—except for Uzzolino himself—share the same business address. Id. ¶¶ 12, 14–16. Finally, Plaintiff names the "Realogy Defendants": NRT LLC, the co-owner of NRT Title (with Uzzolino), see id. ¶ 17; Realogy Holdings Corp. (incorrectly named in the Complaint as "Realogy Corporation," but hereinafter "Realogy"), which is NRT LLC's parent company, id. ¶ 19; and Title Resources Guaranty Company, an affiliate of NRT Title and a subsidiary of Realogy. Id. ¶ 20. Though certain Defendants dispute the alleged relationships between the entities, see, e.g., ECF No. 20.1 at 11, the Court accepts the facts in the Complaint as true at the motion to dismiss stage, see Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

1

that "markups were made to various pass-through costs." <u>Id.</u> ¶ 32; <u>see also</u> <u>id.</u> ¶ 51 ("NRT Title has been hiding the true pass-through costs via various means, including . . . obtaining blank invoices or inflated/fabricated invoices from its third party vendors."). According to Plaintiff, NRT Title also charged her "fees for services not actually performed or impermissible under New Jersey law," including, among others, fees for document review and a messenger service. <u>Id.</u> ¶ 33. She also alleges that A-Absolute Escrow Settlement ("A-Absolute") separately charged her a "'settlement fee' of $525 in addition to various other fees." <u>Id.</u> ¶ 46.

Plaintiff further alleges that "all Affiliated Title Insurance Agency Defendants engaged in the same practices described above," and that NRT LLC and Realogy "knew or should have known about the foregoing illicit practices." <u>Id.</u> ¶¶ 52–53. In addition, she alleges that Uzzolino was "the mastermind behind the illicit billing practices for all Affiliated Title Insurance Agency Defendants," <u>id.</u> ¶ 54, and that the Affiliated Title Insurance Agency Defendants "were and are sham ventures carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks and things of value in exchange for referrals of settlement services to and among the Defendants," <u>id.</u> ¶ 65. As a result, Plaintiff claims that she paid more for settlement services than she would have in the absence of the referrals and kickbacks. <u>See</u> <u>id.</u> ¶ 67.

Plaintiff brought this suit on October 19, 2018 on behalf of herself and all others similarly situated. She asserts five causes of action: (1) violation of the New Jersey Consumer Fraud Act (the "NJCFA"), <u>id.</u> ¶¶ 86–92; (2) unjust enrichment, <u>id.</u> ¶¶ 93–98; (3) breach of contract, <u>id.</u> ¶¶ 99–105; (4) violation of Section 8(b) of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2607(b), ¶¶ 106–11; and (5) violation of Section 8(a) of RESPA, 12 U.S.C. § 2607(a), <u>id.</u> ¶¶ 112–24. Defendants now move to dismiss each of these claims on the ground that Plaintiff fails to state a claim upon which relief can be granted.

## II.    Legal Standard

In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. <u>Phillips</u>, 515 F.3d at 233. Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>Id.</u> The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." <u>Id.</u> Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## III.   Discussion

### A.    New Jersey Consumer Fraud Act

To state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct; (2) an ascertainable loss; and (3) a casual relationship between the unlawful conduct and the ascertainable loss." <u>Harnish v. Widener Univ. Sch. of Law</u>, 931 F. Supp. 2d 641, 648 (D.N.J. 2013); <u>see also</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007). "Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations promulgated under N.J. Stat. Ann. §§ 56:8-2, 56:8-4." <u>Harnish</u>, 931 F. Supp. 2d at 648 (explaining that conduct is unlawful if it is "misleading" such that it "stand[s] outside the norm of reasonable business practice"); <u>see also</u> <u>Argabright v. Rheem Mfg. Co.</u>, 201 F. Supp. 3d 578, 605–06 (D.N.J. 2016)

("False promises, misrepresentations, and concealment or omission of material facts all constitute deceptive practices under [the NJCFA].").

Claims brought under the NJCFA must also meet the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). See Frederico, 507 F.3d at 200 (applying Rule 9(b)'s "stringent pleading restrictions" to plaintiff's NJCFA claim). As such, a plaintiff must plead "the who, what, when, where, and how." In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (internal quotation marks omitted); see also Frederico, 507 F.3d at 200 (holding that Rule 9(b) requires that fraud be alleged "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged'"). Where NJCFA claims are asserted against multiple defendants, "[a] plaintiff must plead fraud with particularity with respect to each defendant." Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 13-6272, 2015 WL 7871165, at *3 (D.N.J. Dec. 4, 2015).

### 1. NRT Title

NRT Title argues that Plaintiff's claim against them is barred by the learned professional/semi-professional exemption to the NJCFA. See ECF No. 22.1 at 28. The Court disagrees that the exemption applies and finds that Plaintiff adequately states a claim against NRT Title.

Courts in New Jersey hold that "learned professionals" are "beyond the reach of the [NJCFA] so long as they are operating in their professional capacities." Macedo v. Della Russo, 178 N.J. 340, 342–46 (2004); see also Plemmons v. Blue Chip Ins. Services, Inc., 387 N.J. 551, 556 (App. Div. 2006) (finding an insurance broker for homeowner's insurance to be a semi-professional and thus excluded from liability under the NJCFA for the performance of brokerage services). However, the "learned professional/semi-professional exemption" only "excludes insurance brokers, acting within the scope of their professional license, from liability, not insurance companies, selling insurance." Haskins v. First Am. Title Ins. Co., No. 10-5044, 2011 WL 5080339, at *3 (D.N.J. Oct. 25, 2011); Call v. Czaplicki, No. 09-6561, 2010 WL 3724275, at *9 (D.N.J. Sept. 16, 2010) ("The 'learned professionals' exemption applies only to insurance brokers and not insurance companies."). As such, NRT Title is not exempt from claims brought under the NJCFA.

Moreover, the Court finds Plaintiff's allegations sufficient to state an NJCFA claim against NRT Title. Plaintiff alleges that in December 2017, NRT Title charged her "fees for services not actually performed or impermissible under New Jersey law, including . . . $75 for 'Document Review' . . .; $50 for the 'Messenger,'" $300 for 'Closing Prep' and $25 for 'Secondary Mortgage Market Endorsement.'" Compl. ¶¶ 32–33; see also id. ¶¶ 34–49 (detailing why certain services were believed to be duplicative or not performed). Drawing all inferences in favor of the Plaintiff, the Court finds these allegations sufficient to establish that NRT Title's conduct "stand[s] outside the norm of reasonable business practice," such that it would "victimize the average consumer." See Harnish, 931 F. Supp. 2d at 648. Plaintiff also alleges that NRT Title wrongfully charged her at least $545 for title insurance as a result of the misrepresentations. See Compl. ¶ 50. This is sufficient to constitute an ascertainable loss that is causally connected to NRT Title's unlawful conduct. See Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 336 (D.N.J. 2014) (explaining that "all that is required" to establish ascertainable loss is an allegation that plaintiffs "received something less than, and different from, what they reasonably expected" (internal quotation marks omitted)). Accordingly, Plaintiff states a claim under the NJCFA against NRT Title.

## 2. The Uzzolino Group Defendants

The Uzzolino Group Defendants argue that Plaintiff's allegations are insufficient to satisfy Rule 9(b)'s heightened pleading standard. The Court agrees.

Plaintiff fails to state with particularity the circumstances of the alleged fraud such that any of the Uzzolino Group Defendant would be put on notice of the precise misconduct with which it is charged. See In re Advanta Corp. Sec. Litig., 180 F.3d at 534. Instead, Plaintiff puts forth generalized allegations regarding all of the Uzzolino Group Defendants. See, e.g., Compl. ¶ 53 ("[A]ll Affiliated Title Insurance Agency Defendants have engaged in the same practices described above."). Such "collectivized allegations . . . do not suffice." Giercyk, 2015 WL 7871165, at *3; see also Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 492 (D.N.J. 1998) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'.").

Although Plaintiff also argues that certain Uzzolino Group Defendants are "directly implicated," see ECF No. 30 at 20–21 (referencing Pony Messenger Service, A-Absolute, and Uzzolino), Plaintiff's Defendant-specific allegations are equally insufficient. For example, Plaintiff alleges that A-Absolute separately charged her a "'settlement fee' of $525." Compl. ¶ 46. Without more, however, this allegation does not satisfy Rule 9(b)'s heightened pleading standard. See Zebarsky v. Bed Bath & Beyond, Inc., No. 06-1735, 2006 WL 3454993, at *4 (D.N.J. Nov. 29, 2006) ("[T]he pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss."). Similarly, Plaintiff alleges that NRT Title charged her $50 for a messenger, "which was paid to Defendant Pony Messenger Service, LLC." Compl. ¶ 41. Plaintiff then alleges that "[t]he same day hand delivery of a title commitment to an attorney's office is totally unnecessary in today's era of emails and cheaper commercial overnight delivery services." Id. ¶ 42. Nevertheless, "[m]ere customer dissatisfaction does not constitute consumer fraud." In re Van Holt, 163 F.3d 161, 168 (3d Cir. 1998) (finding the denial of insurance benefits to which the plaintiffs believed they were entitled did not constitute an unconscionable commercial practice).

In addition, Plaintiff fails to allege facts with sufficient particularity against Uzzolino. Plaintiff alleges that "Uzzolino was the mastermind behind the illicit billing practices for all Affiliated Title Insurance Agency Defendants." Compl. ¶ 54. Yet, the Complaint lacks any factual support for this statement. See Tremco Canada Div., RPM Canada v. Dartronics, Inc., No. 13-1641, 2013 WL 2444076, at *3 (D.N.J. June 4, 2013) ("Merely asserting that [Defendant] made 'false promises' without giving any factual detail in support of that statement is not enough to state a viable [NJCFA] claim."). The only other Uzzolino-specific allegations are the following: (1) NRT Title is a joint venture between Uzzolino and NRT LLC, Compl. ¶ 17; (2) Uzzolino owns or partially owns a number of the other named Defendant entities, id. ¶¶ 14–15; (3) the Uzzolino-owned entities share the same business address, id. ¶¶ 14–16; and (4) Uzzolino and all other Defendants "plotted and carried out the over-charge scheme," id. ¶ 54. However, Plaintiff fails to allege what Uzzolino specifically did, when he did it, or how.

Nor has Plaintiff alleged sufficient facts to justify piercing the corporate veil of NRT Title such that Uzzolino could be held individually liable. "[A] primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." State Capital Title & Abstract Co. v. Pappas Bus. Services, LLC, 646 F. Supp. 2d 668, 679 (D.N.J. Jan 15, 2009)

(internal quotation marks omitted). "Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil." Id. To pierce the corporate veil, a plaintiff must show: (1) "unity of interest and ownership" such that "the separate personalities of the corporation and the individual no longer exist"; and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Id. (internal quotation marks omitted). The Third Circuit considers various non-binding factors in determining whether unity of interest and ownership exists, including:

> gross undercapitalization . . . 'failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.'

Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 150 (3d Cir. 1988) (quoting Am. Bell Inc. v. Fed'n of Tel. Workers, 736 F.2d 879, 886 (3d Cir. 1984)).

Here, Plaintiff's allegations fail to establish "unity of interest and ownership" between Uzzolino and NRT Title. Although Plaintiff alleges that "[s]ome . . . NRT Affiliates do not have sufficient initial capital and net worth" or "employees of their own," Compl. ¶ 56, Plaintiff does not adequately allege that NRT Title is "merely a facade" for Uzzolino's operation. See Craig, 843 F.2d at 150. Indeed, the only substantive allegation against Uzzolino individually is that he is the "mastermind" behind the alleged billing scheme. See Compl. ¶ 54. This conclusory allegation is insufficient to permit the Court to pierce the corporate veil. See Wrist Worldwide Trading GMBH v. MV Auto Banner, No. 10-2326, 2011 WL 5414307, at *5 (D.N.J. Nov. 4, 2011) ("[B]are-boned allegations of undercapitalization and common control and/or management, standing alone, do not rise to the level of plausibility required to survive a 12(b)(6) motion."); see also Hottenstein v. City of Sea Isle City, 793 F. Supp. 2d 688, 691–92 (D.N.J. 2011) (granting the motion to dismiss as to the individual defendant where complaint was "devoid of any allegations supporting an inference that [the individual defendant] used the corporate form 'to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law'"). Accordingly, Plaintiff's NJCFA claim is dismissed as against the Uzzolino Group Defendants.

### 3. The Realogy Defendants

The Court also finds Plaintiff's allegations insufficient to support an NJCFA claim against any of the Realogy Defendants. The only allegations specific to the Realogy Defendants are that: (1) NRT LLC and Realogy "knew or should have known about the foregoing illicit practices and approved same," Compl. ¶ 52; and (2) NRT LLC, Realogy, and their affiliates "have written or unwritten policies and practices to effectively direct its brokers, agents and employees to refer title insurance businesses almost exclusively to NRT Title," id. ¶ 6. Neither of these allegations is sufficient to establish unlawful conduct under the NJCFA with the specificity required by Rule 9(b). See Eli Lilly, 23 F. Supp. 2d at 491 (explaining Rule 9(b) requires plaintiffs to describe "the circumstances of the alleged fraud with precise allegations of date, time or place," or alternatively, to "use some means of 'injecting precision and some measure of substantiation into their allegations of fraud'").

Plaintiff raises several allegations in her briefing that are not present in the Complaint. See, e.g., ECF No. 29 at 27 ("Realogy built its family of companies to facilitate and disguise the payment of unlawful referral fees, kick-backs, and other things of value."); id. at 27 n.8 ("There

has been a notable and continuous 'bonus incentive' . . . based in part on the number of transactions in which NRT Title is utilized."). Plaintiff's Complaint, however, cannot "be amended by the briefs in opposition to a motion to dismiss." <u>Commonwealth of Pa. ex. Rel Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1998).

As such, Plaintiff's NJCFA claim is dismissed as against all Defendants, except for NRT Title.

### B. Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." <u>Equiom (Isle of Man) Ltd. v. Jacobs</u>, No. 16-4362, 2017 WL 6550481, at *4 (D.N.J. Dec. 22, 2017) (internal quotation marks omitted). "Retention of a benefit without payment is not unjust unless the plaintiff expected remuneration from the defendant, or if the facts where known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>VRG Corp. v. GKN Realty Corp.</u>, 135 N.J. 539, 554 (1994) ("The unjust enrichment doctrine requires that plaintiff must show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."). Furthermore, New Jersey courts require that "the plaintiff allege a sufficiently direct relationship with the defendant to support the claim." <u>Arlandson v. Hartz Mountain Corp.</u>, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (internal quotation marks omitted).

NRT Title argues that Plaintiff fails to state a claim for unjust enrichment against them. The Court disagrees. Plaintiff alleges that Defendants "benefited by charging, collecting, and retaining title insurance related fees and charges in excess of what is legally permitted," Compl. ¶ 94, and that NRT Title also charged her fees for services it did not perform, <u>id.</u> ¶ 33. As a result, Plaintiff alleges that NRT Title was unjustly enriched at her expense. At this stage, the Court is satisfied that these allegations are sufficient to state a claim for unjust enrichment. <u>See</u> <u>Equiom</u>, 2017 WL 6550481, at *4. Plaintiff adequately alleges that NRT Title received a benefit—her payment—and that retention of that benefit without repayment would be unjust.

However, Plaintiff fails to state an unjust enrichment claim as against all other Defendants. As noted, New Jersey courts require that there be a "sufficiently direct relationship" between the plaintiff and defendant to establish an unjust enrichment claim. <u>See</u> <u>Arlandson</u>, 792 F. Supp. 2d at 711. Where the plaintiff does not purchase something "directly" from the defendant, courts generally dismiss the plaintiff's unjust enrichment claim. <u>See</u> <u>Snyder v. Farnam Companies, Inc.</u>, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (dismissing plaintiffs' unjust enrichment claim where plaintiffs failed to allege that they purchased anything "directly" from the manufacturer); <u>Maniscalco v. Brother Intern. Corp. (USA)</u>, 627 F. Supp. 2d 494, 506 (D.N.J. 2009) (dismissing plaintiff's unjust enrichment claim where he did not allege that he purchased the machine at issue directly from defendant, and therefore, plaintiff failed to allege that he conferred a benefit "directly upon" defendant). Here, Plaintiff only alleges that she purchased services directly from NRT Title. Thus, Plaintiff fails to allege that she conferred a benefit directly upon any of the other Defendants. Plaintiff's unjust enrichment claim is therefore dismissed as against all Defendants except for NRT Title.

## C. Breach of Contract

To state a claim for breach of contract under New Jersey law, a plaintiff must allege that: "(1) the parties entered into a valid contract, (2) the defendant did not perform his or her obligations under the contract, and (3) the plaintiff suffered damages as a result." RD Legal Funding, LLC v. Cohen, No. 13-77, 2013 WL 6230453, at *3 (D.N.J. Dec. 2, 2013) (internal quotation marks omitted).

### 1. NRT Title

NRT Title argues that Plaintiff's allegations are too conclusory to state a claim for breach of contract. The Court agrees.

As an initial matter, Plaintiff does not specify which Defendant she entered into a contract with. Plaintiff merely alleges that "<u>Defendant</u> formed an agreement and entered into a contract with Plaintiff and the Class members including offer, acceptance, and consideration." Compl. ¶ 100 (emphasis added). She then alleges that she "paid money to <u>Defendant</u> in exchange for <u>Defendants'</u> providing a policy of title insurance and other settlement services," id. ¶ 101 (emphasis added), and that "<u>Defendant</u> breached the Contract by . . . overcharging Plaintiff . . . and failing to inform Plaintiff . . . of such overcharges," id. ¶ 104 (emphasis added). Drawing all reasonable inferences in favor of Plaintiff, Phillips, 515 F.3d at 233, the Court assumes Plaintiff is referring to NRT Title. See Compl. ¶ 32 (detailing the invoice from NRT Title to Plaintiff).

Nevertheless, Plaintiff's breach of contract claim against NRT Title still fails. Plaintiff does not allege that she entered into a written or oral agreement with NRT Title. Rather, Plaintiff maintains that "the alleged conduct of NRT Title and Plaintiff sufficiently establishes that there was an implied contract between them." ECF No. 28 at 34. While New Jersey recognizes "implied-in-fact contracts that arise from promises implied by words and conduct in light of the surrounding circumstances," Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 109 (2007), an implied-in-fact contract is only enforceable if the terms are "sufficiently clear and capable of judicial interpretation," Shebar v. Sanyo Bus. Systems. Corp., 111 N.J. 276, 290 (1988). At best, Plaintiff has alleged that she and NRT Title entered into an agreement pursuant to which Plaintiff would pay NRT Title for services related to her closing. If, however, the invoice operates as an offer, Plaintiff's payment of the charges operates as a manifestation of assent to the offer's terms. See, e.g., Senior Settlements, LLC v. Growth Trust Fund, 2008 WL 11383961, at *8 (D.N.J. Feb. 27, 2008) ("[T]he eventual tender of payment, the performance of the contract, was acceptance by [Plaintiff].") Plaintiff fails to allege that the terms of the invoice were different from any prior agreement, or that NRT Title breached any terms of their implied-in-fact contract. Accordingly, Plaintiff has not adequately stated a breach of contract claim against NRT Title.[2]

---

[2] Indeed, Plaintiff provides no explanation in her Opposition as to how or why NRT Title breached the contract. See ECF No. 28 at 34–35. Plaintiff only argues that "the alleged conduct of NRT Title and Plaintiff sufficiently establishes an implied contract between them." Id. at 35. She also suggests that if there is an implied contract, "the resulting agreement will include an implied duty of good faith and fair dealing." Id. (internal quotation marks omitted). Whether or not NRT Title's conduct constitutes a breach of the implied duty of good faith and fair dealing, however, is irrelevant because Plaintiff has only asserted a breach of contract claim. See Margulies v. Chase Manhattan Mortg. Corp., 2005 WL 2923580, at *4–5 (N.J. App. Div. Nov. 7, 2005) (analyzing plaintiff's "breach of contract" and "breach of duty of good faith and fair dealing" separately because they are "plainly" two different claims).

## 2. The Uzzolino Group Defendants and the Realogy Defendants

The Uzzolino Group Defendants and the Realogy Defendants also argue that Plaintiff's allegations are insufficient to state a breach of contract claim as against them. The Court agrees.

First, Plaintiff does not allege that entered into a contract directly or indirectly with any of the Realogy Defendants or the majority of the Uzzolino Group Defendants. In the absence of a any agreement, there can be no basis to support a claim for breach of contract. See RD Legal Funding, 2013 WL 6230453, at *3. The only Defendant-specific allegations relating to potential agreements are the following: (1) "NRT Title charged Plaintiff a $50 fee for 'Messenger,' which was paid to Defendant Pony Messenger Service, LLC," Compl. ¶ 41; and (2) "Absolute Escrow Settlement separately charged Plaintiff for its closing service for a 'settlement fee' of $525 in addition to various other fees," id. ¶ 46. However, neither of these allegations are sufficient to establish either the existence of a contract, and even if they were sufficient, Plaintiff fails to allege that either such contract was breached.

Nor has Plaintiff pled facts that would establish that the remaining Defendants should be liable under any purported contract to which they were not parties. Plaintiff's argument that certain Defendants are liable because the corporate veil should be pierced is unavailing. As Plaintiff has not adequately alleged that there was any breach of NRT Title's implied-in-fact contract with Plaintiff, Uzzolino and others would not be liable even if it were appropriate to pierce the corporate veil. Therefore, Plaintiff's breach of contract claim is dismissed as against all Defendants.

## D. Section 8(b) of RESPA

"Enacted in 1974, RESPA regulates the market for real estate 'settlement services,' a term defined by statute to include 'any service in connection with a real estate settlement.'" Freeman v. Quicken Loans, Inc., 566 U.S. 624, 626 (2012) (quoting 12 U.S.C. § 2602(3)). Section 8(b) of RESPA specifically states: "No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Thus, there can be no violation of Section 8(b) unless "a charge for settlement services was divided between two or more persons." Freeman, 566 U.S. at 638.

The Third Circuit also holds that Section 8(b) does not provide a cause of action for "overcharges" but permits a cause of action for unearned "markups."[3] Santiago v. GMAC

---

[3] "[A]n overcharge occurs when a settlement service provider charges a fee in excess of the actual cost of services performed and retains the excess portion of the fee." Tubbs v. N. Am. Title Agency, Inc., 531 F. App'x 262, 266 (3d Cir. 2013). In contrast, markups occur when "a closing agent charges a borrower a settlement fee in excess of the amount the closing agent pays a third-party to actually perform the settlement service, and the closing agent retains the excess charged." Id. (emphasis added). NRT Title argues Santiago's holding—that Section 8(b) permits a claim based on unearned markups—cannot be reconciled with the Supreme Court's decision in Freeman. See ECF No. 35 at 14–15. The Court disagrees. The Third Circuit has explicitly stated that its "approach in Santiago was consistent with the Court's analysis and holding" in Freeman. Tubbs, 531 F. App'x at 266. Although Tubbs is an unpublished decision, the Court sees no reason to depart from the Third Circuit's reasoning.

Mortgage Grp. Inc., 417 F.3d 384, 388–89 (3d Cir. 2005).  A markup can violate Section 8(b) in two ways: "(1) a service provider may markup the cost of a service provided by a third-party vendor, and keep the marked-up portion of the charge"; and (2) "an improper markup may occur in the form of a 'kickback,' 'where, for example, a settlement service provider arranges for a consumer to use the services of a third-party vendor, and that vendor then shares a portion of the amount charged to the consumer with the settlement service provider.'" Tubbs, 531 F. App'x at 266 (quoting Santiago, 417 F.3d at 388–89).

### 1. NRT Title

Plaintiff challenges the following eight charges from NRT Title as impermissible or not actually performed:

1. $50 for "Preparation for Description"
2. $25 for "Transaction Management Fee"
3. $75 for "Document Review"
4. $300 for "Closing Prep"
5. $25 for "Secondary Mortgage Market Endorsement"
6. $50 for "Messenger"
7. $50 for Tax and Assessment Searches
8. $25 for Flood Hazard Certificate.

See ECF No. 22.1. NRT Title argues that none of the charges alleged are actionable under Section 8(b).  The Court agrees that charges (1) through (6) are not actionable, but finds that charges (7) and (8) are actionable.

Charges (1), (3), (4), and (5), are not actionable because Plaintiff fails to allege that they were shared in any way.  There can be no violation of Section 8(b) unless "a charge for settlement services was divided between two or more persons."  Freeman, 566 U.S. at 638; see also Kiley v. NRT Title Agency, LLC, No. 09-3549, 2010 WL 2541627, at *5 (D.N.J. June 17, 2010) (dismissing plaintiff's Section 8(b) claim where plaintiff failed to allege that defendant "engaged any third party" and thus "[a]ll of the money charged to the [plaintiff] . . . related to the actual costs of the recording fees or was retained by NRT").  Here, Plaintiff alleges that NRT Title should not have charged her: the $50 fee for "Preparation for Description" because this service was not required and NRT Title "did not actually perform the service," Compl. ¶¶ 34, 37; $75 for "Document Review" because it is not permitted by the Manual of Rates and Charges, id. ¶ 33; $300 for "Closing Prep" because it is a "duplicate and impermissible fee," id. ¶¶ 33, 43; and $25 for "Secondary Mortgage Market Endorsement" because "such endorsements are rarely required by mortgage lenders/investors," id. ¶ 48.  As the Supreme Court has emphasized, however, "a single provider's retention of an unearned fee" is not actionable under Section 8(b).  Freeman, 566 U.S. at 631.  Had Plaintiff alleged that another vendor provided Plaintiff with these services and that NRT Title retained the marked-up portion of the charges, the result might be different, but Plaintiff has not done so.  Thus, these fees are not actionable markups under Section 8(b).

Although Plaintiff alleges that charges (2) and (6) involved a third-party, these charges still fail to support a Section 8(b) claim as alleged. With respect to charge (2), the transaction

management fee, Plaintiff alleges that such fees are charged to title insurance agents by "software vendors." Id. ¶ 39. Plaintiff then claims that "[t]itle agents in New Jersey usually do not charge such fees." Id. ¶ 40. Plaintiff fails to allege, however, that NRT Title marked up the cost of the service or shared a portion of the amount charged with the software vendor.[4] Merely alleging that title agents do not usually charge a transaction management fee is insufficient to establish that such charges were shared. As for charge (6), Plaintiff alleges that NRT Title charged her $50 for a messenger, which was paid to Pony Messenger Service. Compl. ¶ 41. She further alleges that Pony Messenger Service "delivers title binders exclusively for NRT Title and other Affiliated Title Insurance Agency Defendants." Id. Yet, Plaintiff has not alleged that NRT Title marked up the cost of the messenger fee and kept a portion of the charge, or that Pony Messenger Service never performed the service. See Tubbs, 531 F. App'x at 266. A service provider is not in violation of Section 8(b) for merely paying a third-party vendor for services actually performed. See 12 U.S.C. § 2607(b); see also Freeman, 566 U.S. at 636 ("[A] settlement-service provider who gives a portion of a charge to another person who has not rendered any services in return would violate [Section 8(b)].").[5]

In contrast to charges (1) through (6), charges (7) and (8) are actionable as alleged. Plaintiff alleges that NRT Title charged her $50 for "Tax and Assessment Searches," even though the "actual cost charged to NRT Title was around $35," and $25 for a "Flood Hazard Certificate," which was marked-up $10 to $15. Compl. ¶ 32. Drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately alleged that NRT Title accepted a divided fee for services it did not perform with respect to the "Tax and Assessment Searches" and the "Flood Hazard Certificate." See Markocki v. Old Republic Nat. Title Ins. Co., 2015 WL 3421401, at *13 (E.D. Pa. May 27, 2015) ("Liability under [Section 8(b)] is triggered when a settlement service provider gives or accepts a divided fee for which no services were performed."). Plaintiff's allegation that NRT Title was "charged" implies that a third-party provided a service to NRT Title. The Court finds it reasonable to infer that NRT Title kept the excess portion of each charge and did not perform any additional work given that the nature of the services alleged.

Accordingly, Plaintiff has stated a Section 8(b) claim against NRT Title, but only on the basis of charges (7) and (8).

### 2. The Uzzolino Group Defendants and the Realogy Defendants

The Uzzolino Group Defendants and the Realogy Defendants argue that Plaintiff's allegations are insufficient to state a Section 8(b) claim as against any of them. The Court agrees.

---

[4] Plaintiff alleges in her Opposition, for the first time, that certain fees were shared. See, e.g., ECF No. 28 at 22 n.7 ("NRT Title effectively shared a minor portion of this fee with the vendor, but kept the majority of this impermissible charge to itself."). Plaintiff's Complaint, however, cannot "be amended by the briefs in opposition to a motion to dismiss." Commonwealth. of Pa. ex. Rel Zimmerman,836 F.2d at 181.

[5] Plaintiff argues that "it cannot be ascertained whether the fee was split directly between Pony, NRT Title and/or Uzzolino" prior to discovery. ECF No. 28. While this may be true, Plaintiff has not alleged that this fee was split in any fashion. Alleging broadly that NRT Title is a "sham venture carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks," see Compl. ¶ 7, is insufficient.

As discussed, the only alleged charges that are actionable under Section 8(b) are charges (7) and (8): the fees for "Tax and Assessment Searches" and for the "Flood Hazard Certificate." However, none of the Uzzolino Group Defendants or the Realogy Defendants are alleged to be involved with those specific charges. Although Plaintiff alleges that "all Affiliated Title Insurance Agency Defendants have engaged in the same practices" as NRT Title, Compl. ¶ 53, and further, that all Defendants were involved in a massive "scheme," id. ¶ 118, such conclusory and general allegations are insufficient to state a claim for a Section 8(b) violation. See Andujar v. Deutsche Bank Nat. Trust Co., No. 14-7836, 2015 WL 4094637, at *8 (D.N.J. July 7, 2015) (dismissing plaintiffs' RESPA claim where plaintiffs failed to allege "which Defendant purportedly accepted real estate services charges" and "the identity of the individual with whom any Defendant split charges," among other things). Plaintiff also alleges that A-Absolute "separately charged" her a fee of $525 "for its closing service," Compl. ¶ 46, but as with Plaintiff's allegations relating to NRT Title, she fails to allege that A-Absolute shared this fee with any other party, or that A-Absolute did not perform any settlement services.

Furthermore, the Court is not persuaded by Plaintiff's argument that she has stated a claim against the Realogy Defendants because they "indirectly received . . . portions of the fraudulent fees and charges through their ownership interests." ECF No. 29 at 22. Such an arrangement is permitted under RESPA's "safe harbor" provision. Section 8(c) provides that RESPA does not prohibit "affiliated business arrangements" so long as: (1) "disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider"; (2) "such person is not required to use any particular provider of settlement services"; and (3) "the only thing of value that is received from the arrangement, other than the payments permitted under this subsection, is a return on the ownership interest or franchise relationship." 12 U.S.C. 2607(c)(4). "[A] plaintiff asserting a RESPA § 8 claim must establish that the transaction is not exempt under [Section 8(c)]." Capell v. Pulte Mortg. L.L.C., No. 07-1901, 2007 WL 3342389, at *6 (E.D. Pa. Nov. 7, 2007). Plaintiff fails to do so.

First, Plaintiff has not alleged a lack of disclosure with respect to the existence of an affiliated business arrangement. Instead, Plaintiff claims that she "did not receive adequate disclosure of the affiliated business arrangement of NRT Title and its affiliates and [she] was not aware of the true nature of the arrangements among them." Compl. ¶ 68 (emphasis added). Merely alleging confusion that resulted from some type of disclosure is insufficient to establish that the required disclosure was not made. Second, Plaintiff does not allege that she was required to use NRT Title; rather, she alleges that her mortgage lender, Guaranteed Rate Affinity, LLC "chose NRT Title to perform title searches," id. ¶ 31, and that "customers are in effect required to exclusively use services of the affiliates," id. ¶ 60. These allegations are insufficient to establish that Plaintiff was required to use certain providers. See Capell, 2007 WL 3342389, at *8 ("For an act to be 'required there must be some element of coercion—as implied in a Corleone-type 'offer he can't refuse'—and it must be alleged in the complaint."). Finally, the only amounts that Plaintiff alleges the Realogy Defendants received, directly or indirectly, are "profits" from NRT LLC's ownership interest in NRT Title. See ECF No. 29 at 22. However, "a return on the ownership interest or franchise relationship" is permitted under RESPA. 12 U.S.C. § 2607(c)(4).

Because Plaintiff fails to establish that the safe harbor provision does not apply, she cannot bring a Section 8(b) claim against the Realogy Defendants on the basis that they received fees through their ownership interests.

Accordingly, Plaintiff fails to state a claim against any of the Uzzolino Group Defendants[6] or the Realogy Defendants.

## E. Section 8(a) of RESPA

Section 8(a) of RESPA "prohibits certain business referrals." Nelson v. Maverick Funding Corp., No. 10-742 (SRC), 2011 WL 1045117, at *4 (D.N.J. Mar. 23, 2011). Specifically, Section 8(a) "prohibits giving or accepting 'any fee, kickback, or thing of value pursuant to any agreement or understanding . . . that business incident to or a part of a real estate settlement service . . . shall be referred to any person.'" Freeman, 566 U.S. at 636 (quoting 12 U.S.C. § 2607(a)). Section 8(a)'s prohibition is both broader than Section 8(b)'s "because it applies to the transfer of any 'thing of value,' rather than to the dividing of a 'charge' paid by a consumer," and narrower "because it requires an 'agreement or understanding' to refer business." Id. ("[A] settlement service provider who agrees to exchange valuable tickets to a sporting event in return for a referral of business would violate [Section 8(a)], but not [Section 8(b)].").

Here, Plaintiff's allegations fail to state a Section 8(a) claim against any of the Defendants. Significantly, Plaintiff does not allege that any specific defendant gave or received anything of value pursuant to an agreement to refer settlement business. Rather, Plaintiff summarily pleads that all Defendants "exclusively refer customers to each other and utilize each other's services." Compl. ¶ 55. Plaintiff adds that the Realogy Defendants and the "co-owners of the Affiliated Title Insurance Agency Defendants" have "written or unwritten policies and practices to effectively direct its brokers, agents and employees to refer title insurance business almost exclusively to NRT Title." Id. ¶ 61. However, Plaintiff does not allege any specifics about any fees, kickbacks, or things of value that were given or accepted pursuant to those agreements. Plaintiff merely claims that the "Affiliated Title Insurance Agency Defendants and their affiliates were and are sham ventures carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks and things of value in exchange for referrals." Id. ¶ 65.

Courts in this District have found similar allegations insufficient to "satisfy the threshold pleading requirements of Federal Rule of Civil Procedure 8(a)." See Schiano v. MBNA, 2016 WL 4009821, at *4 (D.N.J. July 25, 2016) (dismissing Section 8(a) claim where plaintiffs "summarily plead" that "all other defendants . . . paid fees and kickbacks to each other, regarding the [P]laintiffs' subprime mortgage" (internal quotation marks omitted)); Farah v. Lasalle Bank Nat. Ass'n, No. 15-2602, 2016 WL 1162644, at *10 (D.N.J. Mar. 23, 2016) ("Plaintiffs do not explain what these kickbacks were, when they occurred, or which defendants received them. Instead, plaintiffs simply allege the existence of secret kickbacks and lump the actions of defendants together." (internal quotation marks omitted)); Gonzalez v. U.S. Bank Nat. Ass'n, No. 14-7855, 2015 WL 3648984, at *8 (D.N.J. June 11, 2015).

As such, Plaintiff's Section 8(a) claim must be dismissed.

---

[6] For the reasons already discussed, Plaintiff fails to plead the elements required to pierce the corporate veil. Thus, Plaintiff has not stated a Section 8(b) claim against Uzzolino.0

## IV. Conclusion

For the reasons stated above, the Realogy Defendants' Motion to Dismiss, ECF No. 20, and the Uzzolino Group Defendants' Motion to Dismiss, ECF No. 21, are **GRANTED**. Defendant NRT Title's Motion to Dismiss, ECF No. 22, is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**